United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ROBERT ALVARADO in his
capacity as Trustee of the
CARPENTERS HEALTH AND
WELFARE TRUST FUND FOR
CALIFORNIA, et al.,

                    Plaintiffs,

        v.

MARGARET ELLEN ALVAREZ,
Individually; MARGARET ELLEN
ALVAREZ, Individually and dba
R.J. HATLER CONSTRUCTION,
INC.; R.J. HATLER
CONSTRUCTION, INC., a
California Corporation

                    Defendants.
_____/

No.  C-05-00569 PJH (WDB)

**REPORT AND
RECOMMENDATION RE
PLAINTIFFS' MOTION FOR
DEFAULT JUDGMENT**

        Plaintiffs are a voluntary unincorporated association to which various local

carpenter unions belong ("the Union"), various fringe benefit trust funds

established for the benefit of Union members, and the board of trustees of those

fringe benefit trust funds.  *See*, Petition To Confirm Arbitration Award and

Complaint For Breach of Contract on Promissory Note, Breach of Contract, Actual

Damages, Breach of Fiduciary Duty, and Audit, filed February 8, 2005,

("Petition"), at 2.   Defendant, R.J. Hatler Construction, Inc., is bound by a

collective bargaining agreement ("CBA") and various trust agreements to make

1

1   timely contributions to plaintiff trust funds for work performed by R.J. Hatler
2   Construction employees.  Declaration of Richard Alcantar in Support of Motion
3   for Default Judgment, filed May 16, 2005, ("Alcantar Decl."), at ¶¶3, 4 and 5;
4   Errata to Declaration of Richard Alcantar in Support of Motion for Default
5   Judgment, at Ex. B ("Errata"); and Second Errata to Declaration of Richard
6   Alcantar in Support of Motion for Default Judgment, at Ex. A ("Second Errata");
7   *see also,* Petition at 3.  Defendant, Margaret Ellen Alvarez ("Alvarez") signed a
8   Promissory Note on November 10, 2003, in which she acknowledges "doing
9   business as R.J. Hatler Construction" and being "individually liable, bound, and
10  subject to [the CBA and various trust agreements]."  *See*, Petition at 3 and Ex. C.

11       At some point, a dispute arose between the parties over the unpaid
12  promissory note and unpaid benefit contributions.  Pursuant to the terms of the
13  CBA, plaintiffs initiated a grievance procedure, ultimately submitting the
14  grievance to a Board of Adjustment.  Petition at 5.

15       The Board of Adjustment conducted a hearing on the grievance on March 9,
16  2004.  *See*, Petition at Ex. D (Decision and Award of the Board of Adjustment).
17  Ms. Alvarez appeared, pro se, before the Board of Adjustment on her own behalf
18  and in her representative capacity for R.J. Hatler.  *Id*.  On March 10, 2004, the
19  Board of Adjustment issued a Decision and Award ("Award") in favor of
20  plaintiffs, in the amount $347,914.91.[1]

21       On February 8, 2005, plaintiffs filed this action alleging that defendants
22  have refused to comply with the Board of Adjustment's Award, failed to meet their
23  obligations under the Promissory Note, and failed to allow plaintiffs to conduct an
24  audit as required by the various Trust Agreements and the Award.  Petition at 5, 6
25  and 8.

26

27       [1]The Decision and Award lists the amounts due for unpaid fringe benefit contributions
    and liquidated damages as $347,614.91 and for the cost of the Board of Adjustment proceedings
28  as $300.00.  Petition at Ex. D.

1    Plaintiffs served defendants with a copy of the Petition and related

2    documents.  *See*, Summons and Proofs of Service, filed April 5, 2005, and

3    Supplemental Declaration of Concepción E. Lozano-Batista in Support of

4    Response to Order for Supplemental Briefing, filed July 26, 2005, ("Supp. Lozano

5    Decl.") at Ex. A.  Defendants have not responded to plaintiffs' Petition.  In

6    response to plaintiffs' application for entry of default, the Clerk of the Court

7    entered default as to defendants on April 22, 2005.

8    On May 16, 2005, plaintiffs filed and served their Motion for Default

9    Judgment By Court ("Motion").  On June 22, 2005, Judge Hamilton referred this

10   matter to a Magistrate Judge for report and recommendation.  On July 13, 2005,

11   the Court ordered plaintiffs to submit supplemental briefing, fixed a deadline for

12   defendants to respond, and scheduled a hearing.  The Court also ordered plaintiffs

13   to serve a copy of that order on defendants immediately.  Plaintiffs' counsel

14   represented that defendants were served with that order.  *See*, Transcript of August

15   10, 2005, hearing.  Plaintiffs filed supplemental materials on July 26, 2005.

16   Defendants have not responded.  On August 10, 2005, the Court conducted a

17   hearing in connection with plaintiffs' Motion.  No appearance was made on behalf

18   of defendants.

19   Following the hearing, the Court's staff contacted plaintiffs' counsel to

20   notify plaintiffs that, in the Court's view, defendants had not been properly served

21   with the Petition.  See, discussion section I, *infra*.  On August 30, 2005, plaintiffs

22   filed a letter asking the Court to reconsider that conclusion.

23   In their motion for default judgment, plaintiffs seek the following relief:  (1)

24   confirmation of the March 10, 2004, Board of Adjustment Award[2]; (2) an order

25

26       [2]Plaintiffs' Motion seeks, *inter alia*, confirmation of the Award for "$347,914.91 in
unpaid fringe benefits, liquidated damages, interest, amounts due and owing on the Promissory

27   Note; and costs of arbitration proceedings for the period of May 2003 through January 2004."
Motion at 3.  Plaintiffs' Motion indicates that the Board's Award includes the amount owed on

28   the promissory note.  Although the Board's Award appears to include the amount owed under

1   directing defendants to submit to an audit as required by the CBA and trust

2   agreements; (3) an order requiring defendants to pay all sums revealed by the

3   anticipated audit as due and owing; (4) reasonable attorneys' fees and costs related

4   to this lawsuit; and (5) an injunction permanently enjoining defendants to timely

5   submit all required monthly contribution reports and to timely pay all

6   contributions owing.[3]

7            The Court RECOMMENDS as follows.

8

9   **I.       Confirmation of the March 10, 2004, Board of Adjustment Award**

10           **A.       Applicable Law**

11           Plaintiffs seek confirmation of the March 10, 2004, Board of Adjustment

12   Decision and Award pursuant to section 301 of the Labor Management Relations

13   Act.  *See*, Memorandum of Points and Authorities in Support of Petition to

14   Confirm Arbitration Award, filed February 8, 2005, and Response to Order for

15   Supplemental Briefing re Motion for Default Judgment, filed July 26, 2005,

16   ("Supplemental Response") at 3-4.

17           This Court believes, but is not certain, that the Federal Arbitration Act

18   applies to collective bargaining agreements such as the one in this case.  *See,*

19   *Circuit City v. Adams*, 532 U.S. 105 (2001) (holding that the only contracts

20

21

22

23

24   the promissory note, it does not explicitly mention the promissory note.  Plaintiffs represent that
25   the promissory note was included as part of plaintiffs' Exhibit A to the Board and, therefore, was
     before the Board.  *See*, Response to Order for Supplemental Briefing re Motion for Default
26   Judgment, filed July 26, 2005, ("Supplemental Response") at 5.

27           [3]Plaintiffs' Motion also seeks "an accounting between Plaintiffs and Defendant."  Motion
     at 3.  Plaintiffs later clarify that their request for an audit and an accounting is "one and the
28   same."  Supplemental Response, at 11.

exempted from the FAA's coverage are contracts of "employment of transportation workers").[4]

This Court is aware of authority in the Ninth Circuit that appears to suggest that, in this circuit, the FAA does not cover CBAs.  *See, PowerAgent, Inc. v. Elec. Data Sys. Corp.,* 358 F.3d 1187, 1193 (9th Cir., 2004).  However, at this juncture, the Ninth Circuit has not squarely decided whether the Supreme Court 's decision in *Circuit City* overrules the Circuit's earlier view that the FAA does not apply in these kinds of situations.  *See, PowerAgent Inc.,* 358 F.3d at 1193 n.1.  Given the breadth of *Circuit City*'s language, this Court is compelled to conclude that CBAs are not exempt from the FAA.

Under the pertinent provision of the Federal Arbitration Act,

> (i) <u>If the parties in their agreement have agreed</u> that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and <u>shall specify the court</u>, then (ii) <u>at any time within one year</u> after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, **and thereupon the court must grant such an order** (iii) <u>unless the award is vacated, modified, or corrected, as prescribed in sections 10 and 11 of [the FAA]</u> . . .(iv) <u>Notice of the application shall be served upon the adverse party</u>, and thereupon the court shall have jurisdiction of such party as though he had appeared generally in the proceeding.  If the adverse party is a resident of the district within which the award was made, such service shall be made upon the adverse party or his attorney as prescribed by law for service of notice of motion in an action in the same court.  If the adverse party shall be a nonresident, then the notice of the application shall be served by the marshal of any district within which the adverse party may be found in like manner as other process of the court.

9 U.S.C. §9 (emphasis and roman numerals added).

---

[4]*See also, Smart v. International Brotherhood of Electrical Workers*, 315 F.3d 721, 724 (7th Cir. 2003) (citing *Circuit City* for the proposition that the FAA covers collective bargaining agreements).

1    As alluded to above, the Court's staff notified plaintiffs' counsel that,

2    because defendants are nonresidents of this district and because this Court

3    concludes that the FAA applies to plaintiffs' Petition, plaintiffs were required to

4    serve defendants via the marshal.[5]  Plaintiffs have not.[6]

5    Plaintiffs' August 30th letter asks the Court to reconsider its conclusion that

6    the FAA applies to arbitration agreements contained in collective bargaining

7    agreements.  According to plaintiffs, section 301 of the LMRA governs their effort

8    to confirm the arbitration Award, and plaintiffs contend that they have satisfied the

9    service requirements applicable to that statute.

10   We grant plaintiffs' request that we reconsider our ruling with respect to the

11   applicability of the FAA.  As indicated, we continue to conclude that *Circuit City*

12   compels us to rule that the FAA applies to arbitration agreements contained in

13   collective bargaining agreements.  However, we also conclude that the

14   applicability of the FAA does <u>not</u> preclude confirmation of an arbitration award

15

16   _____

     [5]At the August 10, 2005, hearing the Court erroneously indicated that it appeared that
17   plaintiffs would satisfy all requirements set forth in section nine of the FAA.  Following the
     hearing, while drafting this Report and Recommendation, the Court observed that plaintiffs had
18   not, in fact, satisfied the service requirement.

19   [6]Plaintiffs satisfy all other requirements imposed by section nine of the FAA for
     confirmation of the March 10, 2004, Board of Adjustment Decision and Award.
20       First, the CBA specifies that a party may obtain a judgment from <u>this</u> Court confirming
     an award by the Board.

21       A decision of the Board of Adjustment by majority vote, or the decision of a
         permanent Arbitrator shall be enforceable by a petition to confirm an arbitration
22       award filed in . . . the United States District Court for the Northern District of
         California.
23
     Errata, at Ex. A (Carpenters Master Agreement) at §51, ¶13 and Supplemental Declaration of
24   Richard Alcantar in Support of Response to Order for Supplemental Briefing, filed July 26,
     2005, ("Supp. Alcantar Decl.") at ¶2.
25       Second, plaintiffs' request is timely.  The Board issued its Award on March 10, 2004.
     Plaintiffs applied for an order confirming the Award less than one year later on February 8,
26   2005.
         Third, nothing in the record suggests that the Board of Adjustment Award has been
27   vacated, modified, or corrected pursuant to sections 10 or 11 of the FAA.  We therefore
     RECOMMEND that the District Court FIND that the Award has not been so vacated, modified,
28   or corrected.

under the alternate avenue of the LMRA.  Therefore, until the Ninth Circuit tells us otherwise, we RECOMMEND that the District Court find that where plaintiffs seek to confirm an award made pursuant to a collective bargaining agreement plaintiffs may seek confirmation of that award if they satisfy the standards for doing so under either the LMRA or the FAA.

In so recommending, we acknowledge *Textile Workers Union of America v. Lincoln Mills of Ala.*, 353 U.S. 448 (1957) and its companion case *Goodall-Sanford v. United Textile Workers of America*, 353 U.S. 550 (1957), as well as the Seventh Circuit's ruling in *Smart v. International Brotherhood of Electrical Workers*, 315 F.3d 721 (2003).  *Lincoln Mills*, in which a union sought to compel arbitration pursuant to a collective bargaining agreement and which was decided after enactment of the FAA, established the LMRA as the basis for courts to create a federal common law with respect to enforcement of collective bargaining agreements.  353 U.S. at 456-7.  At that same time, in *Goodall-Sanford*, the Court was asked whether an order compelling arbitration in the labor context is appealable.  Answering, the Court stated directly, "[t]he right enforced here is one arising under s301 of the Labor Management Relations Act of 1947."  These cases post-date the FAA and seem to reflect the view that the LMRA is a primary vehicle for enforcing arbitration provisions in collective bargaining agreements.

Referring to *Lincoln Mills*, the Seventh Circuit ruled that if there were a conflict between the FAA and LMRA that circuit

> would resolve it in favor of section 301. . . . Where there is no conflict, however, and the FAA provides a procedure or remedy not found in section 301 but does not step on section 301's toes, then, . . . We apply the [FAA].

*Smart* , 315 F.3d at6 724-5.

Furthermore, permitting confirmation of an arbitration award under an alternate statutory scheme is consistent with and serves the pro-arbitration policy underlying the FAA.  We note that federal courts will permit enforcement of state statutes that affect arbitration clauses as long as the statutes are "generally

7

1  applicable" rather than specifically hostile to arbitration. *Bradley v. Harris*
2  *Research, Inc.*, 275 F.3d 884 (9th Cir. 2001); *see also, Circuit City*, 532 U.S. at
3  112 and 122 ("the Act was . . . pre-emptive of state laws <u>hostile</u> to arbitration" and
4  "Congress intended the FAA to . . . pre-empt state <u>anti</u>arbitration laws to the
5  contrary") (emphasis added).  It would make little sense to permit use of generally
6  applicable state laws that do not directly undermine the FAA's goals and policies
7  but not to permit use of a comprehensive <u>federal</u> statutory scheme that is not
8  hostile to the goals or policies of the FAA.

9         For the above reasons, we RECOMMEND that the District Court hold that
10  confirmation of the arbitration Award may be sought under either the FAA or the
11  LMRA.

12
13         **B.    Satisfaction of Standard under LMRA**

14         Service of an action based on the LMRA is made pursuant to Federal Rule
15  of Civil Procedure 4.  Rule 4 permits personal service by an eligible process server
16  within 120 days of the filing of the complaint.  F.R.C.P. 4(c), (e), (h) and (m).
17  Plaintiffs caused defendants to be personally served by a valid process server
18  within 120 days of filing the Petition.[7]  See, Summons and Proofs of Service, filed
19  April 5, 2005.  Accordingly, we turn to the substance of plaintiffs' request.

20         The Ninth Circuit has articulated the standard for review under the LMRA
21  as follows:

22         Judicial review of an arbitrator's decision in a labor dispute is
           extremely limited. . . .As long as the arbitrator is even arguably
23         construing or applying the contract and acting within the scope of this
           authority, that a court is convinced he committed serious error does
24         not suffice to overturn his decision. . . . [A]mbiguity in an opinion

25
26         [7]We note that, in this case, the distinctions between the service requirements of the FAA
     and those of the LMRA are of little practical import.  The most important thing in cases such as
     this is that the person who could be adversely affected actually knows about the proceedings
27   before the court and about her opportunity to appear.  In this case, its very clear that Ms.
     Alvarez, an individually named defendant and the representative for the company, was actually
28   notified of these proceedings through personal service.  See, Summons and Proofs of Service,
     filed April 5, 2005.

                                              8

1    that accompanies an award, or a lack of any real opinion at all, is not
2    sufficient to permit an inference that the arbitrator exceeded his
     authority.

3    Garvey v. Roberts, 203 F.3d 580, 588 (9th Cir. 2000) (internal citations and

4    quotations omitted).

5        The Court must uphold the arbitrator's award unless "(1) [it is clear from the

6    arbitral opinion that] the award does not draw its essence from the [CBA] and the

7    arbitrator is dispensing his own brand of industrial justice; (2) . . . the arbitrator

8    exceeds the boundaries of the issues submitted to him; (3) . . . the award is

9    contrary to public policy; or (4) . . . the award is procured by fraud." *Southern*

10   *California Gas Co., v. Utility Workers Union of America*, 265 F.3d 787 (9th Cir.

11   2001); *Garvey,* 203 F.3d 580, 585-89.

12       We have carefully reviewed the March 10, 2004, Board of Adjustment

13   Award.  As the Award construes the effective Carpenters Master Agreement (*See*,

14   Errata, at Ex. B. and Supplemental Response at 12), and appears to be within the

15   Board's authority in all other respects, we FIND that the Award would

16   appropriately be confirmed under the LMRA.  *See*, Transcript of August 10, 2005,

17   hearing.

18       We therefore RECOMMEND that the District Judge confirm the Board of

19   Adjustment's Award under the standards of review established by the LMRA.

20       Under the Board of Adjustment's Award, plaintiffs are entitled to the

21   following relief[8]:

22   1.    A court order directing defendants to immediately cease and desist

23         further violations of the current Carpenters Master Agreement for the

24         remainder of its term, and directing defendants to comply with the

25         agreement for the remainder of its term.

26

27

28        [8]Although we list here only the most significant aspects of the March 10, 2004, Board of
     Adjustment award, we RECOMMEND that the Award be confirmed in its entirety.

2.      A court order directing defendants to pay a sum total of $347,614.91
which encompasses: (1) the Promissory Note for $120,672.06,
representing delinquent contributions for the period May 2003
through August 2003, as well as for liquidated damages ($13,378.02)
and accrued interest at the rate of 6% ($3,958.70) on the delinquent
contributions for that period; and (2) $190,551.94, representing
delinquent contributions for the period September 2003 through
January 2004, and liquidated damages ($19,055.19) on the delinquent
contributions for that period.

3.      A court order directing defendants to immediately cease and desist
from improperly reporting and untimely paying Trust Fund
contributions that are required to be paid to the various Trust Funds
referred to in the Carpenters Master Agreement.

4.      A court order directing defendants to correctly report and timely pay
all required contributions to each and all of the various Trust Funds
referred to in the Carpenters Master Agreement.  Timely payment
means that all payments must be paid "on or before the 15th and no
later than the 25th of each month following the work month for which
each such report is made."

5.      A court order directing defendants to pay $300.00 representing
defendants' share of the cost of the arbitration proceedings.

*See*, Petition at Ex. D (Award).


## II.     Order Requiring Defendants to Submit to Audit and Pay All Sums Revealed By Audit as Due and Owing

The governing CBA requires,

[e]ach individual employer upon request of the Union, the Employer,
or any Trust Fund specified in this Agreement, shall permit the Trust
Fund Auditors to review any and all records relevant to the

> enforcement of the provisions of this Agreement and to enter upon
> the premises of such individual employer during business hours at
> reasonable time or times to examine and copy such books, records,
> papers or reports . . . as may be necessary to determine whether or not
> the individual employer is making full payment of all sums required
> by this Agreement.

Errata, at Ex. A (Carpenters Master Agreement) at §21 and ("Supp. Alcantar

Decl.") at ¶2.  Accordingly, we RECOMMEND that the District Court find that

plaintiffs are entitled to an audit of defendants' relevant records.

In addition, plaintiffs seek a court order requiring defendants to pay all sums

revealed as due and owing by the anticipated audit.

Plaintiffs' counsel represented that the audit procedures followed by

plaintiffs include

> a formal audit request by the Trust Fund to defendants for an audit to
> take place on the defendants' premises at a reasonable time with
> defendants paying the cost of the audit.  If the audit reveals that
> additional contribution amounts are due and owing to plaintiffs,
> plaintiffs will request that the Court amend the Judgment to include
> such amounts.  If such request is necessary, plaintiffs will petition the
> court in writing and will provide defendants with sufficient notice so
> that they may appear if desired.

Supplemental Response at 7.

The Court FINDS that plaintiffs' stated practice provides defendants with a

sufficient opportunity to challenge the accuracy of the audit.  Accordingly, we

RECOMMEND that the District Judge grant plaintiffs' request for an order

directing defendants to pay all sums revealed as due and owing by the audit on the

condition that defendants are given sufficient notice of the pendency of any court

proceedings and a fair opportunity to challenge the accuracy of the audit before

the District Judge.

Plaintiffs also seek post-judgment interest on unpaid contributions which

are found as a result of the audit, if any.  Response to Order for Supplemental

Briefing re Motion for Default Judgment, filed July 26, 2005, at 7:14-16.

Plaintiffs contend that they are entitled to post-judgment interest at a rate of 10%

11

pursuant to Cal. Civ. Proc. §658.010. *Id*. At this juncture, no judgment has been entered and no determination has been made that additional monies (principal) are owing. Therefore, the Court makes no finding concerning whether interest on an amount found at an audit, if any, is chargeable at all, the appropriate interest rate, or whether post-judgment interest will run from the date of the original judgment or from the date the judgement is amended. We RECOMMEND the District Judge refrain from ruling on these matters until the issues become ripe.

## III.   Attorneys' Fees and Costs

_____Plaintiffs based their initial request for attorneys' fees and costs on their assertion that "defendant's refusal to comply with the arbitration award is unjustified and in bad faith." *See*, Memorandum of Points and Authorities in Support of Petition to Confirm Arbitration Award at 4. Plaintiffs have also indicated that their request for fees and costs may be based on the terms of the CBA, the terms of the Promissory Note signed by Ms. Alvarez, and the March 10, 2004, Board of Adjustment's Award. Supplemental Response at 7. Finally, plaintiffs may also be entitled to attorneys' fees and costs under Section 1132(g) of ERISA, which requires a court to award plaintiffs "reasonable attorney's fees and costs of the action" when Trustees obtain a judgment in their favor recovering delinquent contributions to fringe benefit trust funds. 29 U.S.C. §1132(g)(2)(D); *Northwest Administrators Inc., v. Albertson's Inc.*, 104 F.3d 253, 258 (9th Cir. 1996).

We found that the Board of Adjustment did not exceed its authority in issuing the Award. *See*, section, I, *supra*. If the District Judge adopts our recommendation to confirm the Board of Adjustment's Award, the Award entitles plaintiffs to reasonable fees and costs incurred to enforce the Award. Accordingly, we need not consider alternative bases for the fee award.

//

12

1

### A.    Attorneys' Fees

2      Plaintiffs seek reimbursement of attorneys' fees in the amount $5,400.00.

3  *See*, Supp. Lozano  Decl. at ¶2; Declaration of Concepción E. Lozano-Batista in

4  Support of Motion for Attorneys Fees and Costs, filed August 10, 2005, ("Fee

5  Decl.") at ¶2.  Plaintiffs incurred fees in connection with review of the file,

6  preparing documents (*e.g.*, Petition), requesting default, and filing the motion for

7  default judgment and supporting documentation.  Supp. Lozano Decl., at ¶2.

8  Counsel expended twenty seven (27) hours in connection with this lawsuit.  Based

9  on this Court's experience with similar cases and counsel's billing entries, we

10  FIND that the number of hours expended by plaintiffs' counsel in connection with

11  the instant case is reasonable.

12      Plaintiffs' counsel billed at the rate of $200.00 per hour for work by Barry

13  Hinkle and Concepción E. Lozano-Batista.  Declaration of Concepción E. Lozano-

14  Batista in Support of Motion for Default Judgment, filed May 16, 2005, ("Lozano

15  Decl.") at ¶2.  Mr. Hinkle is a managing shareholder at Weinberg, Roger &

16  Rosenfeld and was admitted to the California Bar in 1976.  He has been with the

17  firm for 22 years.  Ms. Lozano-Batista is an associate attorney at Weinberg, Roger,

18  & Rosenfeld and was admitted to the California Bar in 2003.  She has been with

19  the firm for one year.  Supp. Lozano Decl., at ¶3.  At the hearing on plaintiffs'

20  Motion, plaintiffs' counsel represented that Weinberg, Roger & Rosenfeld has

21  agreed to bill its union clients at the rate of $200.00 per hour for both attorneys

22  despite the fact that Mr. Hinkle is substantially more experienced and could seek a

23  higher rate.  Ms. Lozano-Batista also confirmed that the firm's union and trust

24  fund clients are actually billed at this rate and pay it.  Having sat in this

25  jurisdiction for 21 years, and having learned a great deal over that period about

26  billing rates in this region for a wide range of legal work, the undersigned is well-

27  positioned to pass judgment on the reasonableness of the hourly rates for which

28  counsel seek compensation here.  Accordingly, we FIND, and we RECOMMEND

13

1    that the District Judge find, that counsel's billing rate is commensurate with the

2    prevailing market rate in the Bay Area for lawyers of plaintiffs' counsels' skill and

3    experience doing the kind of work this matter involved.

4         Plaintiffs also seek reimbursement for fees incurred for work by their

5    counsel's "paralegal department" which includes a "senior paralegal," a

6    "paralegal," and a "Litigation Case Clerk."  Supp. Lozano Decl., at ¶¶4-8.  Courts

7    routinely reimburse litigants for work conducted by a paralegal.  Based on the

8    Court's experience with similar cases and familiarity with billing rates in this

9    jurisdiction, we FIND both the amount of time spent by the paralegals as well as

10   their billing rates reasonable.  However, plaintiffs have cited no legal authority for

11   their claim that they are entitled to reimbursement for work conducted by a

12   "litigation case clerk."  The cost of utilizing staff such as Ms. Natwick, the

13   "litigation case clerk," is in the nature of "overhead" and is typically subsumed

14   within the billing rates charged for the firm's attorneys.  Therefore, the Court

15   FINDS that plaintiffs have not proved that they are entitled to $131.25 charged for

16   Ms. Natwick's time.  Accordingly, we RECOMMEND that Judge Hamilton deny

17   plaintiffs' request for reimbursement of 'fees' incurred for work conducted by the

18   "litigation case clerk."

19

20        **B.    Costs**

21        Plaintiffs request costs in the amount of $715.68.  Supp. Lozano Decl., at

22   ¶11.  This request encompasses costs for the Court's filing fee, courier and various

23   other service costs, and costs incurred conducting electronic research.  Supp.

24   Lozano Decl., at ¶10.[9]  We are satisfied both that plaintiffs incurred all of the costs

25   listed above, and that the costs are reasonable.

26

27   _____

        [9]Plaintiffs' counsel stated, "our client will be billed for courier service for <u>filing</u>
     Plaintiff's Motion for Default Judgment and related papers."  Lozano Decl., at ¶11 and Supp.
28   Lozano Decl., at ¶11 (emphasis added).  However, as far as we can tell, plaintiffs' never
     submitted evidence indicating the amount of that charge.  Accordingly, no reimbursement for
     this request is included.

**C.    Total Fees and Costs**

If the District Judge adopts this Court's recommendation to confirm the Board of Adjustment Award, we RECOMMEND that the District Judge award plaintiffs costs and fees in the amount of $6,780.68 ($5,400.00 for counsel's fees, $665.00 for their paralegals, and costs for $715.68).[10]

**IV.    Conclusion**

We RECOMMEND that Judge Hamilton CONFIRM the March 10, 2004, Board of Adjustment Award.

We also RECOMMEND that Judge Hamilton GRANT plaintiffs' request for default judgment for the following:

(1)    an order directing defendants to submit to an audit,

(2)    an order requiring defendants to pay all sums revealed as due and owing by the contemplated audit on the condition that defendants are given actual notice of the pendency of any further Court proceedings and an opportunity to challenge the results of the audit, and

(3)    attorneys' fees and costs in the amount $6,780.68.

**The Court ORDERS plaintiffs to serve a copy of this Report and Recommendation on defendants immediately.**

IT IS SO REPORTED AND RECOMMENDED.

Dated: September 16, 2005

/s/  Wayne D. Brazil
WAYNE D. BRAZIL
United States Magistrate Judge

Copies to:
Plaintiffs with direction to serve defendants,
PJH,  wdb, stats

_____

[10]Plaintiffs' counsel's final fee summation totaled $7,765.00. Fee Decl., at ¶5. According to our math, however, the total is $6,065.00; this sum is based on $4,700.00 for attorneys' fees as evidenced in paragraph 2 of the Supplemental Lozano Declaration, $700.00 for attorneys' fees as evidenced in the "Fee Declaration" and $665.00 for paralegal fees as evidenced in paragraph 4 of the Supplemental Lozano Declaration.

15